# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Angel O., <br><br> Petitioner, <br><br> v. <br><br> Kristi Noem, *Secretary, U.S. Department of Homeland Security; Department of Homeland Security, in her official capacity*; Todd M. Lyons, *Acting Director of Immigration and Customs Enforcement; Immigration and Customs Enforcement, in his official capacity*; David Easterwood, *Field Office Director of Enforcement and Removal Operations, Minneapolis – St. Paul Field Office, Immigration Acting Director, St. Paul Field Office Immigration and Customs Enforcement, in his official capacity*; Mary De Anda-Ybarra, *Field Office Director of Enforcement and Removal Operations, El Paso Field Office, Immigration and Customs Enforcement, in her official capacity*; Warden of El Paso Camp East Montana Detention Center, *custodian of detainees at the El Paso Camp East Montana Detention Center, in their official capacity*; <br><br> Respondents. | File No. 26-CV-822 (JMB/DJF) <br><br><br> **ORDER** |

Karen V. Bryan, KB Law PLLC, St. Louis Park, MN, for Angel O.

Trevor Brown and Ana H. Voss, United States Attorney's Office, Minneapolis, MN, for Respondents Kristi Noem, Todd M. Lyons, David Easterwood, Mary De Anda-Ybarra, and Warden of El Paso Camp East Montana Detention Center.

1

This matter is before the Court on Petitioner Angel O.'s[1] Petition for Writ of Habeas Corpus (Petition) under 28 U.S.C. § 2241. (Doc. No. 2 [hereinafter, "Pet."].) Respondents Kristi Noem, Todd M. Lyons, David Easterwood, Mary De Anda-Ybarra, and Warden of El Paso Camp East Montana Detention Center (together, Respondents) are named in the Petition. For the reasons explained below, the Court grants the Petition in part.

## FINDINGS OF FACT[2]

1. Angel O. is a citizen of Ecuador who entered the United States and was paroled pursuant to 8 U.S.C. § 1182(d)(5)(A) starting on September 11, 2022, and valid through November 15, 2022. (Pet. ¶¶ 1, 14, & Ex. A.) At the time he was paroled into the United States, Respondents released him from custody. (*Id.*) He then applied for asylum. (*Id.* ¶¶ 2, 26.)

2. He has been living in Minnesota for the last nearly three years and has a valid work permit and no criminal history. (*Id.* ¶¶ 2–3, 27.)

3. On January 12, 2026, Immigration and Customs Enforcement (ICE) detained Angel O. in Minnesota. (*Id.* ¶¶ 4, 6.) ICE offered no explanation for this arrest and did not provide Angel O. any written custody determination, Notice to Revoke Bond, or explanation for the detention. (*Id.* ¶ 4–5.) There was no warrant for this arrest. (*Id.* ¶ 45.)

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

[2] Because Respondents did not contest any of the factual allegations in the Petition, these allegations are deemed admitted. *See, e.g.*, *Bland v. California Dep't of Corr.*, 20 F.3d 1469, 1474 (9th Cir. 1994) ("When the State's return fails to dispute the factual allegations contained in the petition and traverse, it essentially admits those allegations."), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000).

4.     Angel O. has complied with all the terms of his parole—never even missing a required immigration appointment—and knows of no reason why he was taken into custody. (*Id.* ¶¶ 27–28.) Prior to his recent detention, he had never been placed in removal proceedings. (*Id.* ¶ 27.)

5.     After being detained in Minnesota for some time, Angel O. was transferred to ERO El Paso East Montana Camp in Texas with no notice to his counsel. (*Id.* ¶¶ 6, 13.)

6.     Angel O. filed his Petition on January 29, 2026. (Pet.) He asks the Court to immediately release him from custody or, in the alternative, to hold a prompt bond hearing to determine whether he should remain in custody. (*Id.* at 15.)

7.     On January 29, 2026, the Court ordered Respondents to respond to the Petition by February 2, 2026, at 11:00 a.m. CT "certifying the true cause and proper duration of Petitioner's confinement and showing cause as to why the writ should not be granted in this case," including providing any supporting documentation that may be needed to establish the lawfulness of Angel O.'s arrest and addressing whether "the absence of a warrant preceding Petitioner's arrest necessitates Petitioner's immediate release." (Doc. No. 4.)

## DISCUSSION

Respondents generally oppose the Petition, explaining that it "raises legal and factual issues similar to those in prior habeas petitions this Court has decided" and that Respondents have appealed one such petition (*see Avila v. Bondi*, No. 25-3248 (8th Cir.)). (Doc. No. 5.) Respondents then incorporate by reference all of the arguments raised in the *Avila* appeal and request denial of the petition. (*Id.*) In this way, Respondents

3

reiterate their argument that the detention of petitioners similarly situated to Isidro L. is mandatory pursuant to 8 U.S.C. § 1225(b).  As this Court has previously concluded, however, Respondents' interpretation lacks merit.

Furthermore, Respondents do not present any argument concerning the assertion that Angel O. is a member of the class already granted habeas relief in *Maldonado Bautista v. Santacruz*, Case No. 5:25-cv-1873, Doc. No. 92 (C.D. Cal. Dec. 18, 2025).  Nor do Respondents make any argument concerning their failure to comply with a statutory requirement that they obtain a warrant prior to arresting Angel O. or that they failed to follow any procedure when revoking Angel O.'s previous release and parole.  For these reasons, the Court grants the Petition in part and orders immediate release.

### A.     Constitutional Guarantee of Habeas Review

As a threshold matter, the Court notes that a writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States.  28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)); *Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 702 (D. Minn. 2025).  For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law."  *Hamdi*, 542 U.S. at 525 (quotation omitted).  The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted).  The

petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence. *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), 2025 WL 2466670, at *5 (D. Minn. Aug. 27, 2025) (citing *Aditya W.H.*, 782 F. Supp. 3d at 703).

### B. Interpretation of Section 1225

Respondents rely on an incorrect interpretation of sections 1225 and 1226 to justify detention without a bond hearing. Courts have overwhelmingly rejected Respondents' interpretation that section 1225(b)(2) requires the mandatory detention of all noncitizens living in the country who are "inadmissible" because they entered the United States without inspection. *See, e.g.*, *Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4 & n.22 (S.D.N.Y. Nov. 26, 2025) (noting that this interpretation had been rejected in 350 cases "decided by over 160 different judges sitting in about fifty different courts spread across the United States" and collecting cases in an Appendix A); *Jose Andres R.E. v. Bondi*, No. 25-CV-3946 (NEB/DLM), 2025 WL 3146312, at *1 n.2 (D. Minn. Nov. 4, 2025) (collecting cases); *Belsai D.S. v. Bondi*, No. 25-CV-3682 (KMM/EMB), 2025 WL 2802947, at *5–6 (D. Minn. Oct. 1, 2025) (collecting cases). This Court also finds Respondents' interpretation unpersuasive.

When interpreting a statute, "every clause and word of a statute should have meaning." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (internal quotation marks omitted) (quoting *Montclair v. Ramsdell,* 107 U.S. 147, 152 (1883)). Noncitizens who have been residing in the United States but who entered without inspection have not, historically, been considered to still be "arriving" under section 1225(b). This is because the statute itself states that, in order to apply, several

5

conditions must be met; specifically, an immigration officer must determine that the noncitizen "is an applicant for admission . . . seeking admission . . . [and] not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Determining the plain meaning of the statute requires consideration of the tense of the verb "is" and the present participle "seeking." Here, section 1225(b)(2) applies to persons who presently are applicants for admission and who presently are seeking admission at the time of their detention. To be seeking admission means to be seeking entry, which "by its own force implies a coming from outside." *United States ex rel. Claussen v. Day*, 279 U.S. 398, 401 (1929). In this case, Angel O. has been residing in the United States and is, therefore, not currently "seeking admission" into the United States.

In addition, Respondents' interpretation of 1225(b)(2) renders superfluous other immigration laws. Specifically, interpreting section 1225(b)(2) as applying to noncitizens who have already entered the country and are not currently seeking admission into the country, as Respondents urge, would render meaningless a recent amendment to section 1226 by the Laken Riley Act (LRA). The LRA added new categories of noncitizens subject to mandatory detention under section 1226(c), and one such category was for noncitizens lacking valid documentation *and* who have been charged with or convicted of certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E)(i)–(ii). But if Respondents' interpretation of section 1225 were correct, then there would have been no need for the LRA to create these additional categories because all noncitizens who are present in the United States and have not been admitted would have already been ineligible for bond under section 1225(b)(2)(A).

The Court also agrees with those courts that have found that Respondents' interpretation of section 1225(b) is "at odds with both the relevant legislative history and longstanding agency practice." *Belsai D.S.*, 2025 WL 2802947, at *7; *see, e.g.*, *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1150 (D. Minn. 2025) (discussing the longstanding practice of treating noncitizens who resided in the United States, but who had entered without inspection, as being subject to section 1226(a)).

The fact that Angel O. has applied for asylum does not change the conclusion. The definition of "admission" in this context means "the lawful *entry* of the noncitizen into the United States after inspection and authorization by an immigration officer." *Barco Mercado*, 2025 WL 3295903 at *5 (quoting 8 U.S.C. § 1101(a)(13)(A) (emphasis altered)). Even by applying for asylum, a "noncitizen who already has entered the United States illegally and is living here cannot be said to be actively seeking lawful *entry* into the United States," because the "entry, whether lawful or unlawful, occurred years ago." *Id.* (emphasis in original). Other courts have reached this same conclusion under similar facts. *E.g.*, *Quishpe-Guaman v. Noem*, No. 4:25-CV-00211-TWP-KMB, 2025 WL 3201072, at *4 (S.D. Ind. Nov. 17, 2025) (finding it was "strong evidence" that the federal government earlier released a noncitizen on her own recognizance under section 1226 and rejecting Respondents' argument that her asylum application shows that she "is plainly seeking admission to the United States"); *Mayamu K. v. Bondi*, File No. 25-3035 (JWB/LIB), 2025 WL 3641819, at *4, 8 (D. Minn. Oct. 20, 2025) (concluding that despite a pending asylum application, the petitioner's previous Order of Release on Recognizance under section 1226 precludes detention under section 1225).

Therefore, the Court concludes that Angel O.'s detention is governed by section 1226(a), and he is not subject to section 1225(b)'s mandatory detention.

### C. Membership in the Class

Separate and apart from the Court's conclusion above, the Court also is compelled to grant the Petition because Angel O. is a member of the class certified under *Maldonado Bautista*. The *Maldonado Bautista* class includes:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

2025 WL 3713987, at *32 (C.D. Cal. Dec. 18, 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). As a class member, Angel O. is subject to that court's declaratory relief and final judgment holding that class members are not subject to mandatory detention and are instead entitled to a bond hearing under section 1226(a).

### D. Remaining Independent Grounds for Relief

Moreover, the Court also grants the Petition and orders release for two other, independent reasons. First, because section 1226(a) applies, a warrant was a prerequisite to Angel O.'s detention. *See Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026); *Juan S.R. v. Bondi*, No. 26-CV-5 (PJS/LIB), Doc. No. 8 at 3–4 (D. Minn. Jan. 1, 2026). *See also* 8 U.S.C. § 1226(a) ("*On a warrant issued*

8

*by the Attorney General*, [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." (emphasis added)). The Petition alleges that Angel O.'s arrest was warrantless (Pet. ¶ 45), and Respondents have not presented evidence to the contrary. Consequently, on this independent basis, the Court grants the Petition and orders Angel O.'s immediate release.

Second, the Court also grants the request for immediate release because it is persuaded by the analysis of the court in *Rodriguez-Acurio v. Almodovar*, No. 2:25-CV-6065 (NJC), 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025). Like the petitioner in *Rodriguez-Acurio*, Angel O. was previously released on temporary parole, did not violate any terms of the release, and has not been provided with sufficient due process of law. *See id.* at *9–24, 30–31. Accordingly, the Court orders that Angel O. be released in Minnesota.

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED, as follows:

1. Respondents are ORDERED to release Petitioner Angel O. from custody in Minnesota immediately, and in any event on or before 4:00 p.m. CT on February 3, 2026.

2. On or before 11:00 a.m. CT on February 4, 2026, counsel for Respondents shall file a letter affirming that Petitioner was released from custody in accordance with this Order. Counsel shall also file a declaration on or before 11:00 a.m. CT on February 4, 2026, pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaches any and all relevant documentation concerning the Petitioner's release, and affirms that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property and the legal basis for retention).

3. Angel O. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

4. As to other forms of relief requested, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 2, 2026 
/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court